**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 06-1881**

———————————

SNE ENTERPRISES, INCORPORATED,

Petitioner,

versus

NATIONAL LABOR RELATIONS BOARD,

Respondent.

———————————

**No. 06-1917**

———————————

NATIONAL LABOR RELATIONS BOARD,

Petitioner,

versus

SNE ENTERPRISES, INCORPORATED,

Respondent.

———————————

On Petition for Review and Cross-Application for Enforcement of an
Order of the National Labor Relations Board.  (9-CA-40915; 9-CA-
41191; 9-CA-41291; 9-CA-41338)

———————————

Argued:  September 25, 2007          Decided:  December 7, 2007

———————————

Before WILKINSON, NIEMEYER, and SHEDD, Circuit Judges.

Petition for review denied; cross-application for enforcement granted by unpublished opinion. Judge Shedd wrote the opinion, in which Judge Wilkinson joined. Judge Niemeyer wrote an opinion concurring in part and dissenting in part.

**ARGUED:** Grant T. Pecor, NANTZ, LITOWICH, SMITH, GIRARD & HAMILTON, Grand Rapids, Michigan, for SNE Enterprises, Inc. David A. Seid, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for the Board. **ON BRIEF:** Ronald Meisburg, General Counsel, John E. Higgins, Jr., Deputy General Counsel, John H. Ferguson, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Robert J. Englehart, Supervisory Attorney, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for the Board.

Unpublished opinions are not binding precedent in this circuit.

SHEDD, Circuit Judge:

This dispute arises out of a successful organizing campaign by the United Steelworkers of America (the "Union") at the Huntington, West Virginia plant (the "Plant") of SNE Enterprises, Inc. ("SNE"), and out of SNE's subsequent challenge to the results of the Union election. SNE petitions for review of an order of the National Labor Relations Board (the "Board"), determining that SNE unlawfully (1) withheld a wage increase during the Union campaign and failed to conduct planned wage reviews; (2) discharged employee Benny Moore because of his union activity; (3) prohibited employee Dana Adkins from speaking with co-workers about a disciplinary incident and discharged him for violating that prohibition; and (4) discharged supervisor Ruth Adkins for testifying adversely to SNE's interests in a Board proceeding. The Board cross-applies, seeking enforcement of its order. Because substantial evidence supports the Board's decision and resulting order, we grant enforcement and deny SNE's petition for review.

I

Section 7 of the National Labor Relations Act, 29 U.S.C. § 151 et seq. ("NLRA" or the "Act"), provides that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for

3

the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. Section 8(a)(1) of the Act makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in" § 7. 29 U.S.C. § 158(a)(1). Section 8(a)(3) makes it an unfair labor practice for an employer "by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." 29 U.S.C. § 158(a)(3).

We must affirm the Board's interpretations of the NLRA if they are "rational and consistent with the Act," and we must affirm the Board's factual findings if they are "supported by substantial evidence on the record considered as a whole." Medeco Sec. Locks, Inc. v. NLRB, 142 F.3d 733, 742 (4th Cir. 1998)(internal citations and quotations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Diesel Co. v. NLRB, 263 F.3d 345, 351 (4th Cir. 2001) (internal quotation and citation omitted). If substantial evidence exists, we must uphold the Board's decision "even though we might have reached a different result had we heard the evidence in the first instance." NLRB v. Daniel Const. Co., 731 F.2d 191, 193 (4th Cir. 1984). Credibility determinations are left to the discretion of the Board absent "exceptional

4

circumstances." NLRB v. Air Prods. & Chem., Inc., 717 F.2d 141, 145 (4th Cir. 1983).

## II

### A.

As found by the Board, SNE's policy was to conduct wage reviews at the Plant twice per year. Although these reviews did not automatically result in a wage increase, SNE decided in early 2004 that it would grant a wage increase in March. Around this time period, the Union began its organizing campaign at the Plant. When SNE learned of the Union campaign, it posted a notice at the Plant stating that although "[a] wage increase was scheduled to be announced and implemented at the end of this week," SNE had decided not to implement the increase while the Union vote was pending. J.A. 792. The notice further stated that "[i]f the union is rejected in the vote, we will be free to implement a wage increase after the election." Id. After the Union pledged not to file any unfair labor practice charges if SNE implemented the planned increase, SNE posted another notice again stating that a wage increase would be granted if the Union lost the election. SNE also failed to conduct wage reviews in September 2004 and March 2005, notwithstanding its policy.

The Board concluded that SNE's failure to grant the March 2004 wage increase and its failure to conduct wage reviews in

accordance with its policy violated §§ 8(a)(1) and (3) of the Act. "An employer's obligation with regard to wage increases during a representation campaign is to proceed as it would have proceeded without regard to union considerations." In re Earthgrains Co., 336 N.L.R.B. 1119, 1129 (2001), enforced, 61 Fed. Appx. 1, 7 (4th Cir. 2003). An employer violates the Act when it withholds a planned wage increase during an organizing campaign without a legitimate business purpose. S. Maryland Hosp. Ctr. v. NLRB, 801 F.2d 666, 668 (4th Cir. 1986).

We conclude the Board's determination is supported by substantial evidence. There is evidence in the record to support the Board's conclusion that SNE had established a practice of conducting biannual wage reviews. The notices posted by SNE support the Board's conclusion that SNE had decided to grant a wage increase in March 2004 and that it did not do so because of the Union. SNE does not dispute that it did not actually grant the increase, nor that it did not conduct wage reviews in September 2004 and March 2005.

## B.

The Board also concluded that SNE violated §§ 8(a)(1) and (3) of the Act by discharging employee Benny Moore for his union activity. Moore worked at the Plant from 1997 to 2004. He was responsible for initiating the Union campaign at the Plant, was a member of the Union organizing committee, and solicited other

6

employees to join the Union. SNE maintained a policy against employee solicitation during work time. In February 2004, Moore was discharged for asking a co-worker to sign a union card during working time, in violation of that policy.

Although an employer may prohibit employee solicitation during working time, an employer may not enforce an otherwise valid no-solicitation rule against union solicitation, while permitting non-union solicitation. Willamette Indus., Inc., 306 N.L.R.B. 1010, 1017 (1992). The Board concluded that SNE selectively enforced its no-solicitation policy against Moore, while tolerating non-Union solicitation. There is testimony in the record that SNE's no-solicitation policy was not enforced against non-union solicitors. Employee Charles South testified that "solicitation is virtually every day. It's all over the plant. It's open." J.A. 800. Other testimony indicated that employees sold various items such as candles, Girl Scout cookies, or tickets to Plant-related activities during work time, sometimes in the presence of supervisors. Accordingly, we hold that substantial evidence supports the Board's conclusion that SNE unlawfully terminated Moore.

C.

The Board also determined that SNE violated § 8(a)(1) of the Act by prohibiting employee Dana Adkins from speaking with co-workers about a disciplinary incident and by discharging him for

7

violating that prohibition. Adkins was employed by SNE from 2003 to 2004. In April 2004, Adkins broke the computer screen of a piece of machinery he was operating. As a result, he was placed on final warning status, suspended for four days, and instructed not to speak with anyone concerning his discipline while SNE's investigation of the incident was pending.

The next month, after SNE's investigation was complete, Adkins attempted to apply for a material handler position, but was told he could not do so because he was on final warning status. When Adkins stated that he had never received the warning, SNE presented it to him the next day. Adkins disagreed with the written warning's statement that he had used "inappropriate and offensive language while talking with maintenance" concerning the broken computer screen. Adkins then spoke with the maintenance employee in question concerning the incident, for which he was discharged.

An employer violates the Act when it maintains confidentiality rules that prohibit employees from discussing the terms and conditions of their employment and by discharging an employee for violation of such a rule, unless substantial business justifications outweigh the protected rights involved. See, e.g., Medeco Sec. Locks, Inc. v. NLRB, 142 F.3d 733, 746-47 (4th Cir. 1998). SNE argues that its instruction to Adkins not to discuss his discipline was justified by the need to protect the integrity of its investigation of the broken computer screen, and by SNE's

8

desire to prevent conflict on the Plant floor, as Adkins had a temper.

The Board concluded that SNE's proffered justifications did not outweigh Adkins's § 7 right to discuss his employment conditions. The Board noted that by the time SNE discharged Adkins, its investigation of the broken computer screen was complete, and thus could not have been jeopardized by Adkins's discussion of the incident. In addition, the Board concluded that SNE's desire to prevent conflict at the Plant was too general to outweigh Adkins's right to discuss his discipline in the particular circumstances here, where Adkins's warning contained what he believed was an unjust allegation that prevented him from bidding for a job.

"It is the primary responsibility of the Board and not of the courts to strike the proper balance between the asserted business justifications and the invasion of employee rights in light of the Act and its policy." NLRB v. Fleetwood Trailer Co., 389 U.S. 375, 378 (1967) (internal citation and quotation omitted). We find no reason to disturb the Board's weighing of competing considerations here.

D.

Finally, the Board determined that SNE violated § 8(a)(1) of the Act by discharging supervisor Ruth Adkins. The Board rejected SNE's contention that it terminated Ruth Adkins for "telling the

9

untruth" in a Board proceeding, and concluded that she was discharged because she testified against SNE's interests.

Ruth Adkins worked at the Plant from 1998 until 2004, holding a lead position beginning in 2002. Prior to the election, the Board determined that the lead position was supervisory. As a supervisor, Ruth Adkins was prohibited by SNE from advocating on behalf of the Union during the Union campaign. After the election, SNE filed objections in another NLRB proceeding, including an objection that the election should be set aside because some of the leads supported the Union. Ruth Adkins was subpoenaed to testify at a Board hearing on SNE's challenges to the Union election. At the hearing, Ruth Adkins testified that she had not advocated for the Union after she was determined to be a supervisor. When she returned to work following the hearing, SNE terminated her, claiming that her testimony in the hearing conflicted with what she had earlier told SNE's management and attorneys about her involvement with the Union, specifically, that she had engaged in Union solicitation.

An employer violates § 8(a)(1) of the Act by discharging a supervisor for testifying in a Board proceeding where the testimony impacts employee § 7 rights. Glover Bottled Gas Corp., 275 N.L.R.B. 658, 658 n.7 (1985), enforced, 801 F.2d 391 (2d Cir. 1986). If an employer seeks to justify such a discharge on the grounds that the testimony was false, the employer must "show

10

affirmatively not only that the testimony was false, but also that it was willingly and knowingly false, that it was uttered with intent to deceive, and that it related to a substantial issue." Id. at 673 (internal quotation and citation omitted).

We hold that the Board's conclusion that SNE failed to carry this burden of proof is supported by substantial evidence. The ALJ declined to credit the testimony of several SNE witnesses that Ruth Adkins did advocate for the Union on the grounds that these same witnesses had not testified to that effect during the proceedings on SNE's challenge to the election. Citing discrepancies in the testimony of SNE attorney Grant Pecor, the ALJ likewise declined to credit his testimony that Ruth Adkins lied in the Board hearing. We decline to disturb the ALJ's credibility determinations.[*]

III

Because we conclude that the Board's findings are supported by substantial evidence, we deny SNE's petition for review and grant the Board's cross-application for enforcement of its order.

PETITION FOR REVIEW DENIED;
CROSS-APPLICATION FOR ENFORCEMENT GRANTED

_____

[*]SNE's claim that it was denied a fair hearing because the ALJ was biased is without merit. We find no evidence of bias on this record. Similarly, SNE's allusion to prior cases over which the ALJ presided is irrelevant to the issues raised in this proceeding. See Fieldcrest Cannon, Inc. v. NLRB, 97 F.3d 65, 69 (4th Cir. 1996) ("A decision-maker's ruling deserves to rise or fall on the case at hand, not on the results in other cases that have little bearing on the issues before us.").

11

NIEMEYER, Circuit Judge, concurring in part and dissenting in part:

Except with respect to the disposition based on the discharge of Ruth Adkins, a supervisor, I concur in the majority opinion. With respect to Adkins, I respectfully dissent.

A supervisor generally does not enjoy the protections of § 7 of the NLRA. But there are exceptions. In USF Red Star, Inc. v. NLRB, 230 F.3d 102, 106 (4th cir. 2000), we noted that although supervisors are not explicitly covered by the NLRA, § 8(a)(1) "is violated if a supervisor's discharge results from his refusal to commit an unfair labor practice" (emphasis added). But we have not held, as the majority now holds, that § 7 employee rights are violated when a supervisor is fired for giving testimony in a Board proceeding. Firing a supervisor for giving testimony is something quite different from firing a supervisor for committing an unfair labor practice against an employee. Accordingly, I would grant the petition of SNE Enterprises, Inc., with respect to the Board's decision on Ruth Adkins' discharge and deny the NLRB's petition to enforce in that limited respect.

12